```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
SILONY MEDICAL INTERNATIONAL, AG,

                        Plaintiff,

        -against-

SWK FUNDING LLC,

                        Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _02/20/2024_

23 Civ. 1784 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Silony Medical International, AG, brings this action against Defendant, SWK Funding LLC, alleging that Defendant unlawfully refused Plaintiff's request to enforce the debt of a non-party. Plaintiff asserts claims for breach of the covenant of good faith and fair dealing and tortious interference with contract, and seeks a declaratory judgment that the contract is void. *See* Am. Compl. ¶ 28–54, ECF No. 8. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 32; *see* Def. Mem., ECF No. 33. For the reasons stated below, Defendant's motion is GRANTED.

**FACTUAL BACKGROUND**[1]

Plaintiff, a Swiss corporation, and Defendant, a Delaware corporation with its principal place of business in Texas, are each lenders to a non-party, 4WEB, Inc. ("4WEB"). Am. Compl. ¶¶ 1–2, 9. On June 3, 2019, Defendant agreed to loan $17 million to 4WEB.[2] *Id.* ¶¶ 18, 38. Then, on November 29, 2019, Plaintiff and 4WEB, who were considering a merger, executed a promissory note (the "Note") in the principal amount of $4 million at an interest rate of twelve percent per annum. *Id.* ¶¶ 14, 17; *see* ECF No. 8-2. The same day, Plaintiff and Defendant entered into a letter

---

[1] The following facts are taken from the complaint, which the Court accepts as true for purpose of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).
[2] As of June 2022, 4WEB owes Defendant at least $28.8 million. Am. Compl. ¶ 38.

agreement (the "Agreement") pursuant to which "the indebtedness owed to [Plaintiff] by 4WEB was subordinated to the indebtedness owed by 4WEB to [Defendant]."  Am. Compl. ¶ 22; *see* Agreement at 2,[3] ECF No. 8-4.  The Agreement provides, in relevant part:

> Until all existing and future indebtedness owing to [Defendant] shall have been indefeasibly paid in full in cash, [Plaintiff] agree[s] not to, without [Defendant]'s prior written consent in its sole discretion: . . . (iii) transfer or demand or accept payment of amounts owing to you, (iv) accelerate the maturity of such amounts, (v) accept any payment from Borrower Parties in respect of any Promissory Note (whether payments of principal, interest or otherwise and not withstanding anything in any Promissory Note to the contrary or the stated maturity date of any Promissory Note), (vi) take any action to enforce payment, performance or otherwise enforce any of the terms thereof, exercise any rights or remedies thereunder (other than the payment of interest in-kind or the equity conversion rights set forth in any such Promissory Note) or take any other actions [Plaintiff] may have related thereto . . . <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, (x) any interest due and owing under such Promissory Note may continue to accrue and/or be paid in-kind and added to the outstanding principal balance in accordance with such Promissory Note until payment in full in cash of all existing and future indebtedness owing to Senior Lender and may be evidenced by new subordinated promissory notes and (y) nothing herein shall be deemed to limit [Plaintiff's] ability to convert [Plaintiff's] Promissory Note into equity interests of the Borrower in the manner provided in [Plaintiff's] Promissory Note, and such equity interests will not be affected by any provision of this Subordination Agreement.

Agreement at 2–3.  The planned merger between 4WEB and Plaintiff failed, and the Note became immediately due on December 30, 2020.  Am. Compl. ¶ 23.  However, 4WEB has made no payments under the Note because "it believes it is prohibited from satisfying the Note due to the [] Agreement." *Id.* ¶¶ 24–25.[4]  On May 13 and June 8, 2021, Plaintiff sent letters to Defendant requesting written consent for 4WEB to pay Plaintiff all amounts due and owed under the Note.  *Id.* ¶¶ 25–26.  Defendant refused.  *Id.* ¶ 26.  Prior to its refusal, Defendant performed "no review or evaluation of the economic feasibility of 4WEB paying any part of its debt to [Plaintiff]."  *Id.* ¶ 30.

---

[3] The Court may consider the Agreement because it was attached to the complaint and incorporated into it by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  The Court uses the page numbers generated by ECF in referring to the Agreement.
[4] 4WEB received the Agreement and "agree[d] to withhold payment in conformity" with it.  Agreement at 8.

**LEGAL STANDARD**

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

**DISCUSSION**

I.  <u>Breach of Contract and Covenant of Good Faith and Fair Dealing</u>

Plaintiff argues that Defendant breached the Agreement by violating the implied covenant of good faith and fair dealing. *See* Pl. Opp. at 6, ECF No. 34. Under New York law, a covenant of good faith and fair dealing is implied in every contract, such that neither party "shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). "While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Fesseha v. TD Waterhouse*

*Inv. Servs.*, 761 N.Y.S.2d 22, 23 (1st Dep't 2003); *accord Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007).

New York courts "do not ordinarily read implied limitations into unambiguously worded contractual provisions designed to protect contracting parties." *Moran v. Erk*, 11 N.Y.3d 452, 456 (2008). Therefore, if the contract includes an "expressly bargained-for clause that allows a party to exercise its discretion" with no limits, the covenant cannot negate that clause. *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) (citing *Moran*, 11 N.Y.3d at 456); *see In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 472 (S.D.N.Y. 2013) ("[A] court may not limit contractual discretion where limitations are not supported by the express contractual language."). For example, in *State Street Bank and Trust Company v. Inversiones Errazuriz Limitada,* 374 F.3d 158 (2d Cir. 2004), the plaintiff bank extended over $100 million in credit to the defendant debtors, who then defaulted. *Id.* at 163–64, 168. The defendants sought to sell certain assets to satisfy the debt, but the contract specified that the bank's consent was required to sell those assets, and the bank refused. *Id.* at 168–69. The Second Circuit held that this was not a violation of the covenant because, "[w]here a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent." *Id.* at 170. Moreover, "the plaintiff's exercise of its rights did not deprive the defendants of the fruits of the bargain for which they contracted—they had already received over $100 million in credit based on their promise to comply with the negative covenants regarding the sale of assets." *S. Telecom Inc. v. ThreeSixty Brands Group, LLC*, 520 F. Supp. 3d 497, 508 (S.D.N.Y. 2021) (citing *id.*).

Plaintiff argues that courts in this district have applied the covenant to impose limits on contractual language that broadly grants discretion to one party. *See* Pl. Opp. at 10–12. But, courts have done so only when the covenant (1) does not negate the contract's express language and (2) is

4

necessary to secure the fruits of the contract.  *S. Telecom Inc.,* 520 F. Supp. 3d at 507.  For example, in *Southern Telecom Inc.*, the plaintiff licensed a trademark and agreed that its use of the trademark would be subject to the trademark owner's approval in its "sole and absolute discretion" following a three-stage application process.  *Id.* at 501.  The trademark owner sold the trademark to the defendant, who began summarily denying the plaintiff's applications to use the trademark solely because the applications came from a competitor.  *Id.* at 502.  The court reasoned that, because the contract set forth an application process, the defendant was at least required to examine the "content of the application."  *Id.* at 511.  Without this requirement, the application process that the plaintiff had bargained for would be meaningless, and the plaintiff would be denied all the fruits of the contract. *Id.* at 509; *see Toledo Fund, LLC v. HSBC Bank USA*, No. 11 Civ. 7686, 2012 WL 364045, at *4 (S.D.N.Y. Feb. 3, 2012) (similarly requiring the defendant bank to consider criteria set forth in the contract, despite the contract reserving sole discretion to the bank as to how to apply the criteria). However, the covenant did not require the defendant to approve the applications, as such a requirement would conflict with the broad discretion afforded by the contract.  *S. Telecom*, 520 F. Supp. 3d at 509.

The Agreement commits the decision to permit Plaintiff to collect the debt from 4WEB to Defendant's "sole discretion."  *See* Agreement at 2.  Unlike the contract in *Southern Telecom*, the Agreement sets forth no criteria or process by which Defendant will evaluate Plaintiff's requests and, therefore, "does not limit [Defendant's] discretion."  *Overseas Priv. Inv. Corp. v. Gerwe*, No. 12 Civ. 5833, 2016 WL 1259564, at *8 (S.D.N.Y. Mar. 28, 2016).

Moreover, enforcement of the covenant is not "necessary to preserve the fruits of the [Agreement] and prevent it from being illusory."  *S. Telecom*, 520 F. Supp. 3d at 507.  Under the Agreement, Plaintiff bargained away its right to collect its debt from 4WEB in exchange for the accrual of interest on the Note and the option to convert the principal and accrued interest into equity

5

interests in 4WEB.  Agreement at 3.  The Agreement does not guarantee that Plaintiff will be able to collect on the debt and, indeed, acknowledges the possibility that Plaintiff will never recover the debt, stating that in the event of bankruptcy, 4WEB's assets must satisfy Defendant's debts prior to any debt owed to Plaintiff.  Agreement at 3.  Moreover, Plaintiff has received the fruits of the Agreement.  4WEB's debt to Plaintiff continues to accrue interest.  Am. Compl. ¶ 45.  And, Plaintiff concedes that the equity option was intended to "incentivize the completion of the merger" between Plaintiff and 4WEB and, therefore, was a bargained-for benefit of the Agreement.  Am. Compl. ¶ 20.  The covenant, therefore, does not restrict how Defendant can exercise its discretion.

Accordingly, Defendant's motion to dismiss the breach-of-contract claim is GRANTED.

II.     Declaratory Judgment

Plaintiff seeks a declaration that Agreement is void because it is unconscionable and because it was procured by fraud.  Am. Compl. ¶ 44.

To have a contract provision declared unconscionable, Plaintiff must show "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party"—in other words, that the Agreement was "both procedurally and substantively unconscionable when made."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (citations omitted).  Plaintiff does not allege that it was unable to meaningfully choose during the contract formation process or, indeed, that there were any procedural deficiencies during bargaining.  Its claim of unconscionability, therefore, fails.  *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).

Pursuant to the heightened pleading requirements in Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Emps.' Retirement Sys. of Virgin Islands v. Blanford*, 794 F.3d 297, 305

(2d Cir. 2015) (citation omitted).  Plaintiff's fraud cause of action rests on its claim that Defendant misrepresented "the extent it would give or evaluate whether to give consent to [Plaintiff] to enforce its debt" and "its intention to loan additional principal advances to 4WEB, in perpetuity."  Am. Compl. ¶ 49.  Because the complaint identifies neither the speaker nor the time and place of the allegedly fraudulent statements, it is insufficiently specific and, therefore, does not state a claim for fraud.[5]

Accordingly, Plaintiff's request for a declaratory judgment is DISMISSED.

III.   Tortious Interference with Contract

A plaintiff asserting a claim for tortious interference with contract must demonstrate "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (citation omitted).  Defendant contends that Plaintiff has not alleged that (1) Defendant intentionally procured 4WEB's breach of contract, or (2) it acted without justification.  Def. Mem. at 10–12.  The Court agrees.

First, Plaintiff does not allege that Defendant caused 4WEB to breach the Note, claiming only that "4WEB has stated it believes it is prohibited from satisfying the Note due to the [] Agreement."  Am. Compl. ¶ 25.  Indeed, 4WEB signed an addendum to the Agreement, agreeing to follow its terms.  Agreement at 8.  Second, even if Defendant had procured 4WEB's breach of the Note, Defendant would have been justified in protecting its financial interests.  *Crigler v. Pennzoil Co.*, 687 F. Supp. 120, 124 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 307 (2d Cir. 1989) ("Procuring the breach of a

---

[5] The Agreement states that (1) Defendant has the "sole discretion" to consent to Plaintiff's collection efforts and that (2) it covers 4WEB's "existing and future indebtedness" to Defendant.  Agreement at 2.  Therefore, even if the alleged representations were made, they were "explicitly contradicted by the written agreement" and cannot sustain a fraud cause of action.  *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008) (citation omitted).

contract in the exercise of an equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong." (citation omitted)).

Accordingly, Defendant's request to dismiss the tortious-interference claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 32, enter judgment, and close the case.

SO ORDERED.

Dated: February 20, 2024
        New York, New York

_____
ANALISA TORRES
United States District Judge